IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| LARRY L. GRIFFEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 10-06099-CV-SJ-DGK |
| DAVIESS/DEKALB COUNTY ) | |
| REGIONAL JAIL, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING SUMMARY JUDGMENT IN PART**

This case arises from the employment of Plaintiffs Larry Griffey and Jeremiah Vassar by Defendant Daviess-DeKalb Regional Jail District. Plaintiffs assert claims for race discrimination, a hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 1981, the Missouri Human Rights Act ("MHRA"), and the Family and Medical Leave Act ("FMLA"). Currently before the Court are Defendant's Motions for Summary Judgment as to Plaintiffs Vassar and Griffey (Docs. 52, 54), Plaintiff Vassar's and Plaintiff Griffey's Suggestions in Opposition (Docs. 61, 62), and Defendant's Reply Suggestions (Docs. 63, 64). For the following reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part.

**Background**

On August 27, 2010, Plaintiff Griffey filed suit against the Defendant alleging violations of the Family and Medical Leave Act, Title VII, and the Missouri Human Rights Act. On October 6, 2010, Griffey filed an Amended Complaint, joining Plaintiffs Michael Mitchell and Jeremiah Vassar and alleging claims including retaliation, race discrimination, and a hostile work environment. Specifically, the Amended Complaint alleged retaliation in violation of the FMLA, Title VII,

1

Section 1981, and the MHRA on behalf of Plaintiff Griffey and race discrimination, a hostile work environment, and retaliation in violation of Title VII, Section 1981, and the MHRA on behalf of Plaintiff Vassar.

Plaintiff Griffey, who commenced employment at the Jail in 2006, claims that he was "singled out and forced to change shifts . . . [and] denied days off" after he filed a claim which resulted in the finding that the Defendant had violated the FMLA (Doc. 9). In 2009, Plaintiff Griffey, who is Caucasian, witnessed five Caucasian officers repeatedly using racially offensive language. He claims he attempted to report this behavior to his supervisors; however, he was terminated shortly thereafter before reporting the incident or filing an official complaint. *Id.* at 16, 18.

Plaintiff Vassar, who is African-American, claims that he was also subjected to racially offensive comments. *Id.* at ¶ 37-38. On one occasion, Vassar claims that his uncle Mitchell, a fellow Jail employee, relayed to him an offensive comment made by Lieutenant John Stieh who stated that Mitchell would make a good doorman. On another occasion, Vassar claims that fellow Jail employees repeated and laughed at racial slurs used by an inmate. Vassar also claims that he was given less desirable work assignments, training, and benefits than Caucasian officers, particularly after making complaints of racial harassment. *Id.* at ¶¶ 34-36.

On August 28, 2009, Mitchell, with whom Vassar shared rides to work, was reprimanded and sent home. After learning that Mitchell was being sent home, Vassar told his supervisors that he would also have to leave because he had no alternative way to get home. *Id.* at ¶ 33, 41. Plaintiff Vassar claims that prison officials accepted this as his resignation, even though he did not intend to voluntarily quit his job. *Id.* at ¶¶ 41-42.

2

Plaintiff Mitchell, whose claims have since been dismissed, claimed he was subjected to racially offensive comments from other officers and was given less desirable assignments and benefits than Caucasian officers. *Id.* at ¶ 20.

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

**Discussion**

**A. Race discrimination under Title VII, Section 1981, and the MHRA**

Establishing a prima facie case for race discrimination under Title VII varies depending on the specific facts of each case. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-54 n.6

3

(1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n. 13, (1973)). Generally in race discrimination cases, stating a prima facie case under Title VII requires that the plaintiff show: (1) that he is a member of a protected racial minority; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Davenport v. Riverview Gardens School Dist.*, 30 F.3d 940, 944-45 (8th Cir. 1994). Under the *McDonnell Douglas* burden-shifting framework, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Cmty. Affairs*, 450 U.S. at 254; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). If the plaintiff states a prima facie case for discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993).

42 U.S.C. § 1981 requires the plaintiff to meet an almost identical standard to state a claim for race discrimination. *Richmond v. Bd. of Regents of Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992). To prevail on a § 1981 claim, the plaintiff must prove "(1) statutorily protected participation; (2) adverse employment action; and (3) a causal relationship between the two." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259 (8th Cir. 1996).

Similarly, MHRA Section 213.055 prohibits employers from engaging in discriminatory employment practices, including wrongful termination. The MHRA defines "discrimination" to include "any unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Mo. Rev. Stat. 213.010(c)(5). Although the MHRA is not identical to Title VII, the court analyzes a claim for

discrimination under the MHRA under the same framework as Title VII claims for race discrimination. *See, e.g.*, *Smith v. Aquila, Inc*. 229 S.W.3d 106, 112-13 (Mo. Ct. App. 2007).

> **1. Vassar states a claim for race discrimination under Title VII, Section 1981, and the MHRA.**

Vassar's factual allegations in support of his claim for race discrimination are that: (1) he was subjected to inappropriate racial comments; (2) he was given less desirable assignments as compared to Caucasian co-workers; and (3) he was not provided the same training as similar Caucasian employees; and (4) he was terminated from his job without justification (Doc. 9). Defendant argues that each of Vassar's allegations is "unsupported by evidence" and that he confuses a claim for race discrimination with a claim for a hostile work environment.

Defendant is accurate in that some of Plaintiff's allegations in the Amended Complaint relating to race discrimination—including the statement, for example, that Vassar was "subjected to inappropriate racial comments and jokes"—are more properly arguments for a hostile work environment. The Court also finds that Plaintiff's assertions that he was denied training opportunities and given less desirable assignments than Caucasian co-workers are unsupported by the evidence. Although Vassar testified that another officer received "different or more training" than him, Vassar has not offered evidence to support this contention. Additionally, Vassar argues that he was provided less desirable job assignments but provides no evidence of which assignments he was denied.

However, the Court finds that Vassar has satisfied all four elements necessary to state a claim under Title VII, Section 1981, and the MHRA regarding his allegation that he was racially discriminated against in his termination. Plaintiff satisfies elements one and three in that he is African-American and was terminated from his position with Defendant. Defendant argues that

Plaintiff fails to provide evidence of element two because he cannot show that he was meeting the Jail's legitimate job expectations. As support, Defendant provides evidence that Lieutenant Stieh spoke with Vassar regarding Vassar's difficulty staying awake during his night shift. Defendant also provides evidence that Lieutenant Stieh was concerned that Vassar was sharing personal information with inmates regarding another employee. These incidents alone, however, do not show that Vassar was unqualified to perform his position or that he was failing to meet his employer's legitimate job expectations. Whether Vassar was meeting his legitimate job expectations is at least a question of fact for the jury.

The Court also finds that there is a genuine issue of material fact as to whether Vassar was terminated under circumstances giving rise to an inference of race discrimination. Defendant argues that Vassar cannot prove that his termination occurred under discriminatory conditions because he provides no evidence that he was treated differently than similarly situated Caucasian employees. However, although proof of disparate treatment would satisfy the fourth requirement of the prima facie case, it is not well-settled that such proof is necessarily required. "Title VII has been interpreted to require . . . that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in 'circumstances which allow the court to infer unlawful discrimination.'" *Walker v. St. Anthony's Med. Ctr,* 881 F.2d 554, 558 (8th Cir. 1989), quoting *Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465, 469 (8th Cir. 1984).

Defendant also argues that Vassar has proffered no evidence that he was treated differently because of his race. However, considering the totality of circumstances, the Court finds there is a genuine issue of material fact as to whether Vassar was subject to unlawful discrimination in his termination. First, Vassar and his uncle, Mitchell, were the first and only black employees who

6

worked at the jail. Second, both were terminated soon after filing written complaints regarding discriminatory and racially offensive conduct. Third, Vassar offers testimony from the Jail Administrator that he did not recall authorizing Vassar's termination and may not have fired him had he known Vassar reported for work the following morning. In addition, Vassar offers his own testimony that he was given limited training, less desirable assignments than Caucasian employees, and was subject to racist comments and jokes. While unsupported claims of limited training and less desirable assignments are not sufficient to support a claim of race discrimination standing alone, these allegations, combined with evidence of an unauthorized termination directly following the submission of written complaints regarding racially offensive conduct, create a factual issue as to discrimination with regard to Vassar's firing. *Ryther v. KARE 11*, 108 F.3d 832, 844 (8th Cir. 1997) (en banc) (finding that stray remarks standing alone will not give rise to an inference of discrimination, they are not irrelevant).

The Defendant argues that even if Vassar established a prima facie case of race discrimination, the Jail has articulated a legitimate, non-discriminatory reason—Vassar's abandonment of his post—for its adverse employment action. The Court finds that Plaintiff has submitted evidence sufficient to create a genuine issue of material fact as to whether this reason is merely pretext. First of all, Defendant presents no testimony that any superior officer told Vassar he could not leave when Mitchell was sent home. In addition, Defendant testified that Lieutenant Hadley was the only person who could authorize a termination of Vassar and he does not remember doing so. In fact, Hadley indicated that had he known Vassar had returned to his job the following day, he may have let Vassar keep his job. Therefore, the Court finds that the reason underlying Vassar's termination is an issue of fact to be determined by the jury, and that Vassar has stated a

7

plausible claim for race discrimination with regard to his termination.

### B. Hostile work environment under Title VII, Section 1981, and the MHRA

Courts analyze claims for a hostile work environment under Title VII and § 1981 using an identical standard. *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1076 (8th Cir. 2005). "To establish a Title VII race-based hostile work environment claim, a plaintiff must show that: (1) he or she is a member of a protected group; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Singletary v. Missouri Dept. of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). For harassment to affect a term, condition, or privilege of employment, it must be severe "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Singletary*, 423 F.3d at 892, quoting *Howard v. Burns Bros., Inc.*, 149 F.3d 840 (8th Cir. 1998).

The prima facie case for a hostile work environment under the MHRA is similar to the standard under Title VII and § 1981. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 666 (Mo. en banc 2009). To prevail on a hostile work environment claim under the MHRA, a plaintiff must prove: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) his protected class membership was a contributing factor in the harassment; and (4) a term, condition or privilege of his employment was affected by the harassment. *Id*. "In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007).

> **1. Vassar fails to state a claim for a hostile work environment under Title VII, § 1981, or the MHRA.**

Vassar alleges that he was subjected to a "steady barrage of opprobrious comments and jokes which were pervasive and severe enough to alter the terms, conditions, or privileges of employment, including but not limited to comments such as 'this room is for whites only,' 'you'll make a great doorman,' and comments about 'niggers, spicks, and Jews'" (Doc. 9, ¶76). Vassar also alleges that after he complained about these incidents, jail supervisors took no actions to remedy the situation.

The Court finds that Vassar cannot state a claim for a hostile work environment under Title VII, § 1981, or the MHRA. Although Vassar is a member of a protected group and there is evidence that he was subjected to unwelcome racial commentary, Vassar has not established that the harassment was so severe and pervasive to be legally actionable under both an objective and subjective standard. "Merely offensive conduct is not enough absent the requisite effect on the terms or conditions of employment. Title VII does not 'impose a code of workplace civility.'" *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843 (8th Cir. 2002), quoting *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 567 (8th Cir. 2000)). Rather, to support a claim for a hostile work environment, Vassar would have to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Singletary*, 423 F.3d at 892, quoting *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003).

Here, Vassar fails to present evidence that the workplace harassment was severe and pervasive. Vassar presents evidence of only two instances of racially offensive comments: the doorman comment and the inmate's comment. The doorman comment was made to Mitchell outside of Vassar's presence and repeated to him only by Mitchell. Similarly, the inmate's comment was not made directly to Vassar but only repeated in his presence. While both of these comments are

9

inappropriate and arguably subjectively offensive, together they do not rise to the level creating a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Singletary*, 423 F.3d at 892. Furthermore, the Eighth Circuit has held that "racial slurs alone do not render a work environment hostile as a matter of law." *Id.* at 893; *see also Jackson v. Flint Ink No. Am. Corp.*, 370 F.3d 791, 792-93 (8th Cir. 2004) (finding that six instances of racially derogatory language from managers and coworkers over a period of a year and half, together with burning cross graffiti, did not render the workplace objectively hostile).

Other relevant factors to consider in determining whether conduct rises to the level of harassment such that it creates a hostile working environment include the "frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary*, 423 F.3d at 893. Here, Vassar has presented no evidence that the racially offensive comments were frequent, that he ever felt threatened or humiliated, or that the comments or their effects interfered with his work performance.

In addition, Plaintiff has failed to allege facts showing that the harassment affected a term, condition, or privilege of his employment. Under the MHRA, for example, "racial discrimination creates a hostile work environment when discriminatory conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." Here, Plaintiff does not contend that the harassment interfered with a term or condition of his employment or affected his work performance. In fact, in his deposition, Vassar admitted that all conditions of his employment remained unchanged throughout his tenure with the Jail. Accordingly, the Court holds that Vassar has failed to state a claim for a

10

hostile work environment under Title VII, § 1981, or the MHRA.

### C. Retaliation under Title VII, Section 1981, and the MHRA

"Title VII prohibits retaliation against employees who initiate or participate in a proceeding or investigation that claims their employer violated Title VII." *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a)). For Plaintiffs to make a prima facie case of retaliation, they must show that: "(1) the employee engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Recio*, 521 F.3d at 938-39. Retaliation claims under § 1981 are analyzed under a similar standard. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997). The *McDonnell Douglas* burden-shifting framework is applicable to retaliation claims under both Title VII and §1981. Like discrimination claims, upon a prima facie showing, "a presumption of retaliation arises, and the burden of production shifts to the employer to advance a legitimate reason for the employment action." *Hughes v. Stottlemyre,* 506 F.3d 675, 678-79 (8th Cir. 2007).

Section 213.070(2) of the MHRA provides that it is unlawful to retaliate or discriminate in any manner against any person because that person opposed any practice prohibited by the Act. Mo. Rev. Stat. 213.070(2); *McCrainey v. Kansas City Missouri Sch. Dist.*, 337 S.W.3d 746, 752-53 (Mo. App. W.D. 2011). "To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove that: (1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal connection existed between the complaint and the adverse action." *McCrainey*, 337 S.W.3d at 753. The plaintiff need not show that discrimination was a substantial or determining factor in the employment decision. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818

11

(Mo. banc 2007). Rather, proving a causal connection between the complaint and the adverse action depends on showing that the complaint was a contributing factor in the adverse action. *Williams v. Trans State Airlines, Inc.*, 281 S.W.3d 854, 866 (Mo. Ct. App. 2009). "A 'contributing' factor has been defined as one 'that contributed a share in anything or has a part in producing the effect.'" *Williams*, 281 S.W.3d at 867.

1. **Vassar fails to state a claim under Title VII, Section 1981, and the MHRA for retaliation.**

Under Title VII, § 1981, and the MHRA, Vassar fails to prove a causal connection between his complaints of discriminatory conduct and his firing. Here, the evidence shows that Vassar complained of discrimination only once, when he reported the inmate statement to his supervisor, Lieutenant Stieh. While the prima facie requires Vassar only to show that the complaint was a "contributing factor in the adverse action," there is no evidence that Vassar's filing of a complaint contributed in any way to his firing. In fact, the record shows that Lieutenant Stieh actually assisted Vassar in completing his report so that the complaint could be investigated. "While the requisite causal connection may be proved circumstantially by showing the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive, generally more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists." *Williams*, 281 S.W.3d at 868-69, quoting *Buettner v. Arch Coal Sales Co., Inc*. 216 F.3d 707, 715-16 (8th Cir. 2000). Here, because Vassar has shown nothing more than a temporal connection between his complaint and his release, the Court holds summary judgment proper as to Vassar's claims of retaliation.

2. **Griffey fails to state a claim under Title VII, Section 1981, and the MHRA for retaliation.**

12

Plaintiff Griffey also alleges that he was fired in retaliation for his complaints of discriminatory conduct. In the Amended Complaint, Griffey alleges that he was "subjected to and witnessed a steady barrage of opprobrious comments which were pervasive and severe to alter the terms, conditions, or privileges of employment," that he made a complaint regarding these statements, and that he was retaliated against for doing so (Doc. 9, ¶¶ 94, 97, 99). In particular, Griffey testified to three statements he believed to be racially insensitive: (1) the use of the word "nigger" by Hadley during a training session; (2) Hadley's use of the phrase "black seat" when he meant to say and later corrected himself to say "back seat;" and (3) the inmate statement that was repeated in the camera room.

However, the evidence shows that Griffey never made a complaint regarding any of these statements. He, therefore, did not engage in protected activity as required by statute. Although Plaintiff argues that Griffey attempted to file a complaint about the inmate statement repeated in the camera room by leaving a message for his supervisors to call him, there is no evidence that any of Griffey's supervisors were aware of the nature of Griffey's messages or the fact that he intended to make a complaint of discriminatory conduct. Finally, Griffey provides no evidence that it was impossible for him to speak with either of his supervisors or to submit a written report regarding the incident between August 10, 2009, the date of the incident, and August 25, 2009, the date of his firing. Accordingly, the Court finds that Griffey did not engage in protected activity and cannot satisfy the first prong of a prima facie case for retaliation under Title VII, § 1981, or the MHRA.

### D. Retaliation under the Family Medical Leave Act

"The FMLA prohibits employers from discriminating against an employee for asserting his rights under the Act." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006). To prove

13

a prima facie case for retaliation, a plaintiff must "show that [he] exercised rights afforded by the Act, that [he] suffered an adverse employment action, and that there was a causal connection between [his] exercise of rights and the adverse employment action." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008). The "causal connection required for a prima facie case is not 'but for' causation, but rather, a showing that the employer's 'retaliatory motive played a part in the adverse employment action.'" *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (citing *Kipp v. Missouri Highway and Transp. Comn'n*, 280 F.3d 893, 897 (2002)). FMLA retaliation claims under 29 U.S.C. § 2615(a)(2) are analyzed under the same *McDonnell Douglas* burden-shifting scheme as Title VII and Section 1981 claims, whereby a plaintiff's establishment of a prima facie case creates the presumption of retaliation. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Smith*, 302 F.3d at 833. If the defendant meets this burden, the burden again shifts back to Plaintiff to present evidence that creates an issue of fact as to whether the proffered reason for the adverse employment decision is a pretext for discrimination. *Phillips*, 547 F.3d at 912.

Griffey alleges the following actions as evidence of FMLA retaliation: (1) his transfer to night shifts; (2) his demotion and reduction in pay; (3) his assignment to work in the women's annex; (4) modification of his days off; (5) Defendant's failure to grant him time off to see doctors; and (6) termination. Plaintiff asserts a causal connection between his FMLA leave and these actions because all occurred soon after his return from FMLA leave. Plaintiff also contends that the evidence supports his claim because he was demoted and had his pay cut within one month of receiving highly successful ratings at his performance evaluation in July 2008.

Defendant argues that Griffey fails to state a claim for FMLA retaliation because he cannot

14

prove that Defendant's adverse employment actions were in retaliation for exercising his FMLA rights. Defendant also argues that Griffey's FMLA claim fails because Defendant can articulate a legitimate, non-discriminatory reason for each alleged retaliatory action. Finally, Defendant argues that Plaintiff's FMLA claim is partially barred by the statute of limitations.

The Court finds that Plaintiff has met his burden of establishing a prima facie case of retaliation under the FMLA. Although Defendant argues that it has a legitimate, non-discriminatory reason for each alleged retaliatory action, the Court holds that there is a genuine issue of material fact as to whether Defendant's stated reasons for each of its actions was legitimate and non-discriminatory, or mere pretext.

However, the Court does hold that Plaintiff's claims are partially barred by the statute of limitations. "An individual asserting a violation of FMLA must bring his action no later than two years 'after the date of the last event constituting the alleged violation for which the action is brought.'" *Gerald v. Kessinger/Hunter Mgmt. Co., Inc.*, No. 07-00475-CV-W-GAF, 2009 WL 877686, 13 (W.D. Mo. 2009) (*quoting* 29 U.S.C. §2617(c)(1)). "[I]f the defendant willfully violated the plaintiff's rights under FMLA, the statute of limitation is extended to three years." *Gerald*, 2009 WL 877686 at *13 (*citing* §2617(c)(2)). "To prove willfulness, the plaintiff must demonstrate the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (citations omitted). "[A]n employer's general knowledge regarding the statute's potential applicability, by itself, fails to demonstrate willfulness" to trigger the three year statute of limitation. *Id.*

Here, the Court finds no evidence in the record to support Plaintiff's contention that Defendant's conduct was willful. Accordingly, the applicable statute of limitations is two years. All

15

acts occurring prior to this time, including Griffey's demotion and reduction in pay which occurred on August 21, 2008, are barred by the statute of limitations.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. The Court holds that Plaintiff Vassar has stated a claim for race discrimination with regard to his termination under Title VII, 1981, and the MHRA and that Plaintiff Griffey has stated a claim for retaliation in violation of the FMLA for acts occurring after August 21, 2008.

**IT IS SO ORDERED.**

Date:  January 3, 2012                              /s/ Greg Kays
                                                    GREG KAYS, JUDGE
                                                    UNITED STATES DISTRICT COURT